IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

MARK A. BIGGS,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.

No. 08-CV-3010-DEO

MEMORANDUM OPINION AND ORDER
REGARDING COMMISSIONER'S
DENIAL OF BENEFITS

_____

**TABLE OF CONTENTS**

I.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 2

II.  THE ALJ'S DECISION . . . . . . . . . . . . . . . . . 7

III. APPLICABLE LAW . . . . . . . . . . . . . . . . . . . 12

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . 13
    A.  *Credibility Determinations* . . . . . . . . . 15
    B.  *Hypotheticals* . . . . . . . . . . . . . . . . 25
    C.  *Onset Date* . . . . . . . . . . . . . . . . . 30

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . 31

Mark A. Biggs seeks disability benefits. The
Administrative Law Judge's (ALJ) decision found Biggs
ineligible. This Court reverses the decision of the ALJ and
awards benefits.[1]

_____

[1]Biggs remains insured through June 30, 2009.

# I.  BACKGROUND

Mark A. Biggs was born on March 17, 1977.  He attended
regular classes in school through high school, earning his
high school diploma after completing the twelfth grade.  Biggs
lives alone in an apartment in the small town of Blairsburg,
Iowa.

Throughout his life, Biggs has suffered from a myriad of
psychiatric problems including:  major depression, anxiety,
poor impulse control, and severe panic attacks.  See, e.g.,
Tr. 277-79, 291.  He has obsessive thoughts and compulsive
rituals, such as taking mathematical inventory of his
immediate surroundings and spending hours combing and trimming
his sideburns to perfect conformity.  Tr. 246, 278, 450-52.[2]
He has attempted suicide several times.  Tr. 278.  He has been
hospitalized on numerous occasions for self-mutilation and

---

[2]At the Hearing before the ALJ, Biggs described his
"shaving ritual" as follows:

> I would spend probably two hours at a time shaving
> because I have to make absolutely sure within millimeters
> that my sideburns were exactly the same length . . . I
> would shave my face so much that it would rub the skin
> off of the face and I would have red marks all over.

Tr. 451.

overdose, and has required emergency room services related to panic attacks. Tr. 193, 245, 278, 309, 320. He has diligently sought medical help for these problems.[3] He also attends therapy sessions regularly. Tr. 449-50. Still, Biggs cannot afford the extensive medical and psychiatric care necessary to improve his life. See, e.g., Tr. 280.

The deterioration of Biggs' physical health has kept pace with his declining mental health. He has insomnia. See, e.g., Tr. 278. He is obese (a side effect of psychiatric medications, rather than overeating (Tr. 350)), and suffers from Type II diabetes. See, e.g., Tr. 342. He is missing all of his front teeth. Tr. 340. He has carpal tunnel in his right hand which causes numbness in his ring and pinky fingers after an hour or more of repetitive movement. Tr. 188, 438-39. Biggs also developed an unhealthy drinking habit for a time. As a result of this habit, he was convicted of DUI three times, serving time for the third conviction. Tr. 448.

_____

[3]The record reveals Biggs has previously missed doctor's appointments and failed to fully comply with his doctor's recommended drug regiment. Tr. 448-49. However, he has since acknowledged the need to comply with his doctors, therapist, and court-appointed nurse, and has even come to find the structure provided by these healthcare professionals quite comforting. Tr. 447-50.

Unable to afford the significant fines imposed for these violations, Biggs has remained without a license, and thus unable to drive, for nearly a decade.  Id.

Although Biggs maintains strong family ties, he has had a tumultuous home life.  He reports he was sexually abused by his brother as a child (Tr. 278), and that he constantly relives this trauma.  Tr. 117.  In addition, Biggs' father passed away in January 2004.  Tr. 117, 245.  His father's death seems to have aggravated his psychiatric conditions.  Tr. 245.  See also Tr. 241 (upon admission to emergency room after suicide attempt, Biggs stated he wanted to "join Dad").

Biggs worked off-and-on at a series of unskilled to semi-skilled jobs between 1992 and 2004.  Tr. 118-19, 131-41, 185-87.[4]  The jobs were physically demanding but paid little.  The most Biggs earned in a single year was $19,526.50.  Tr. 91, 93.  Excluding seasonal work, his first several jobs lasted a year or longer.  Id.  Yet over time, Biggs' ability to hold a

---

[4]Biggs has worked as a forklift operator, paper inserter, pallet builder, pallet repairman, press helper, and laminator operator.  Tr. 118, 131-45, 185-87.  Biggs also reported that he held various full-time positions in the fast food industry, including positions as a cook at McDonald's and also at The Sports Page, both in Fort Dodge, Iowa.  Tr. 435.

job for a significant period of time appears to have waned.

Id. As for the effect his mental health had on his ability to

work at these jobs, Biggs stated:

> I have never been able to fully give 100%
> at work due to my mental problems. I get
> so afraid of other people that I just can't
> function. My depression drains all of my
> energy and I don't have a lot [sic] of
> energy to give because I have a hard time
> sleeping.

Tr. 141. Biggs states his psychiatric problems first began

bothering him in January 1995. Tr. 117. However, he also

explained that his mental health has adversely affected his

job performance at every job he has ever had, making it

difficult to pin down the exact date on which his disability

began significantly interfering with his ability to work. Id.

Biggs filed applications for Disability Insurance

Benefits (DIB)[5] and Supplemental Security Income (SSI)[6]

benefits on April 27, 2004. See Tr. 84-86 (applications for

DIB); 393-95, 402-04 (applications for SSI). In the

applications, Biggs alleged he was disabled due to: (1) major

---

[5] "Title II benefits," i.e., DIB, are governed by the terms of 42 U.S.C. §§ 401 et seq.

[6] "Title XVI benefits," i.e., SSI, are governed by the terms of 42 U.S.C. §§ 1381 et seq.

depression; (2) borderline personality disorder; (3) posttraumatic stress disorder (PTSD); (4) social anxiety disorder (SAD); (5) obsessive-compulsive disorder (OCD);[7] and (6) alcoholism. Tr. 116. In addition, Biggs reported that he was sexually abused as a child and that he self-mutilates. Tr. 117. The applications were denied initially (Tr. 64, 68, 76-79, 80-83, 396-401, 405-09), and were again denied on reconsideration (Tr. 66, 70-73, 410-14).

A hearing took place on February 1, 2007, in West Des Moines and Fort Dodge, Iowa (via video teleconferencing). Tr. 433-64. Biggs was present and represented by counsel, Blake Parker, at this hearing. Tr. 431. Biggs and Vocational

---

[7]OCD is:

> a type of anxiety [disorder] the essential features of which include recurrent obsessions, persistent intrusive ideas, thoughts, impulses or images, or compulsions (repetitive, purposeful, and intentional behaviors performed to decrease anxiety in response to an obsession) sufficiently severe to cause marked distress, be time-consuming, or significantly interfere with the person's normal routine, occupational functioning, or usual social activities or relationships with others.

Stedman's Medical Dictionary 570 (28th ed. 2006).

Expert (VE) Julie Svec testified at this hearing. Id. At the time of the hearing, Biggs was thirty (30) years old, and thus a "younger person" within the meaning of 20 C.F.R. § 404.1563(c). In addition to receiving his high school diploma, Biggs also briefly attended a vocational rehabilitation program offered by a local community college, but he did not complete the program. Tr. 457.

On July 25, 2007, the Administrative Law Judge (ALJ) issued his decision finding that Biggs was not disabled through the date of the decision. Tr. 15-26. Biggs sought review of the Decision by the Appeals Council of the Social Security Administration (SSA) (Tr. 14), providing additional evidence in the form of medical records for the Council's review (Tr. 415-22). However, on February 19, 2008, the Appeals Council denied Biggs' request for review of the ALJ's decision. Tr. 8-11. Therefore, the ALJ's decision (Tr. 15-26) stands as the final decision of the Commissioner and is subject to review by this Court. 42 U.S.C. § 405(g).

## II.  THE ALJ'S DECISION

The ALJ uses a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520,

416.920. A claimant must prove: (1) that he has not engaged in substantial gainful activity; (2) that he has a medically determinable severe impairment, as that term is defined in the regulations; and *either* (3) that his impairment meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is presumed to be disabled, and no further analysis is needed); *or* (4) that his impairment prevents him from performing his past relevant work. 20 C.F.R. § 404.1520. If the claimant carries his burden to this point, then the burden shifts to the Commissioner to prove there are other jobs the claimant can perform. <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 894 (8th Cir. 2006); <u>Johnson</u>, 390 F.3d at 1070.

The record shows the ALJ first determined Biggs had not engaged in substantial gainful activity since August 31, 2004. Tr. 20. At step two, the ALJ found the anxiety disorder and depression disorder amounted to medically determinable severe impairments as defined in the regulations. <u>Id.</u> The ALJ concluded, however, that Biggs' anxiety and depression did not meet the presumptively disabling criteria found at Listings 12.04 and 12.06 of 20 C.F.R. Part 404, subpart P, appendix 1.

Tr. 21.

Next, the ALJ evaluated Biggs' subjective complaints. Tr. 21-24.  At the administrative hearing, Biggs testified that, when faced with certain common, work-related circumstances — problems following instructions, the presence of "more than two people at a time," or triggering factors aggravating his OCD — he suffers from severe panic attacks that cause him to feel extremely dizzy, lightheaded, sweaty, and shaky on his feet.  Tr. 440-42.  Not even his extensive array of prescription drugs has proven effective in preventing these attacks.  Id.  He further testified that he is able to feel the onset of the attacks.  As Mr. Biggs himself put it:

> My heart starts to race.  My palms and my
> face become sweaty.  I feel a great deal of
> heat coming over my body.  My hair starts
> to tingle.  I start to become a little bit
> dizzy, little bit lightheaded, and some —
> not all the time, but sometimes I will
> experience where I see — when I look at
> things, they become a little bit brighter.
> My vision tends to become more acute and it
> becomes more brighter and that's usually
> how I can tell when the symptoms are
> starting.

Tr. 444-45.  Nothing, Biggs further testified, can stop these attacks — attacks he experiences about twice a day.  Tr. 445-46.

Later, when asked to describe his OCD, Biggs explained:

> My obsessive compulsive disorder, it — the
> first thing that I noticed it did was I
> would walk by let's say a pallet that's
> stacked with a certain number of boxes or
> a certain number of anything. I cannot
> walk — just walk past that and look at it
> and walk past it. I would actually have to
> stop, contemplate how many boxes were on
> that and use mathematics to figure out
> exactly how many boxes were on that. And
> that became a great deal — a great problem
> for me because when you are doing that,
> that causes me more anxiety having to do
> that. And also another symptom of that was
> . . . getting into rituals, shaving for
> one. Although it may sound sort of petty,
> I would spend probably two hours at a time
> shaving because I have to make absolutely
> sure within millimeters that my sideburns
> were exactly the same length and that would
> — I would shave my face so much that it
> would rub the skin off of the face and I
> would have red marks all over.

Tr. 450-51.

The ALJ evaluated these subjective complaints and allegedly disabling symptoms by applying the requirements and factors of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and 20 C.F.R. §§ 404.1529 and 416.929. Tr. 22. After providing a boilerplate recitation of these factors, the ALJ discounted Biggs' subjective complaints of disabling pain and other symptoms, based upon several conclusory findings, as

10

described in further detail below.

After discounting Biggs' subjective complaints, the ALJ reviewed the medical evidence and hearing testimony and determined Biggs' residual functional capacity (RFC). Tr. 23-24. The ALJ determined that Biggs "is fully capable of performing simple, routine work that involves only occasional contact with the public, co-workers, and supervisors, as well as occasional changes in a routine work setting." Tr. 24.

Then, after considering the VE's testimony — which indicated Biggs could not perform any of his past relevant work (PRW) as a forklift operator, hand packager, machine packager, wood box maker, printing inker, cylinder press operator apprentice, and cook — the ALJ determined that Biggs was not able to perform any of his PRW. Tr. 24. However, the ALJ concluded that Biggs was in fact "capable of making a successful adjustment to other work that exists in significant numbers in national economy," and "[a] finding of 'not disabled' is therefore appropriate." Tr. 25. The ALJ in turn concluded that Biggs "has not been under a disability, as defined by [the Act], at any time from the alleged onset date through the date of this decision." Tr. 26.

### III. APPLICABLE LAW

The scope of this Court's review is limited to determining whether the decision of the ALJ is "supported by substantial evidence in the record as a whole." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Substantial evidence is evidence that a reasonable mind would find adequate to support a decision, considering both evidence that detracts from and evidence that supports the [ALJ's] decision." Id. If the evidence allows two inconsistent conclusions, and one of them is the ALJ's, this Court must affirm. Id. "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." Wilcutts v. Apfel, 143 F.3d 1134, 136-37 (8th Cir. 1998) (citing Brinker v. Weinberger, 522 F.2d 13, 16 (8th Cir. 1975)). See also Patrick v. Barnhart, 323 F.3d 592, 595 (8th Cir. 2003).

As explained above, if two inconsistent positions are possible and one represents the ALJ's findings, this Court must affirm. On the other hand, this Court is nevertheless obligated to apply a balancing test to contradictory evidence to determine if the decision of the ALJ is supported by

substantial evidence on the record as a whole.  In <u>Gavin v.</u>
<u>Heckler</u>, 811 F.2d 1195 (8th Cir. 1987), then Chief Judge Lay
clarified this point when he wrote:

> Substantial evidence on the record as a
> whole, however, requires a more
> scrutinizing analysis.  In the review of an
> administrative decision, the substantiality
> of evidence must take into account whatever
> in the record fairly detracts from its
> weight.  Thus, the court must also take
> into consideration the weight of the
> evidence in the record and apply a
> balancing test which is contradictory.  It
> follows that the only way a reviewing court
> can determine if the entire record was
> taken into consideration is for the
> district court to evaluate in detail the
> evidence [the ALJ] used in making [his]
> decision and how any contradictory evidence
> balances out.

811 F.2d at 1199 (citations and internal marks omitted).

## IV.  DISCUSSION

Biggs brings the present appeal, asserting the following
interrelated arguments:  (1) the opinions of Dr. Sang O. Lee,
MD, Biggs' treating psychiatrist, are credible and supported
by the record, and therefore should not have been ignored by
the ALJ; and (2) the hypotheticals propounded by the ALJ to
the VE were improper in that they excluded several of Biggs'
limitations that were amply supported by evidence in the

record. Docket No. 9 at 2. Had the ALJ accorded proper weight to Dr. Lee's opinions, Biggs argues, he would have in turn incorporated all of Biggs' relevant limitations in a hypothetical similar to the one Biggs' counsel propounded to the VE. Docket No. 9 at 6-7. Because this hypothetical elicited a response from the VE that Biggs could not be gainfully employed, the ALJ would have found that Biggs was in fact disabled. Id.

The Defendant argues that the ALJ's disability determination is supported by substantial evidence. Specifically, the Defendant contends that the ALJ was justified in only affording Dr. Lee's opinions partial weight "because it was obvious from Dr. Lee's progress notes that Plaintiff's symptoms greatly improved when he followed prescribed medication and abstained from alcohol." Docket No. 8 at 9 (citing the ALJ's Decision at Tr. 24). Defendant argues that the ALJ's credibility determination is supported by substantial evidence, including the ALJ's finding that Biggs' statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not credible. Id. Finally, Defendant argues that the ALJ's hypotheticals

propounded to the VE "included the concrete consequences of the impairments and limitations the ALJ found to be credible." Docket No. 8 at 11. "Therefore," the Defendant urges, "the [VE's] testimony was substantial evidence supporting the ALJ's decision." Id.

## A. *Credibility Determinations*

Dr. Lee's opinions were based at least in part on Biggs' subjective complaints. The Court must therefore evaluate Biggs' claim that Dr. Lee's opinions should have been afforded greater weight by the ALJ by first evaluating Biggs' credibility. This in turn leads to the ALJ's analysis concerning Biggs' residual functional capacity (RFC), in which the ALJ found that Biggs' subjective complaints were "not entirely credible." Tr. 23.

In evaluating a claimant's RFC, the ALJ is required to assess a claimant's credibility. Specifically, the ALJ is required to examine and to apply the five factors from Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. §§ 404.1529 and 416.929.[8] See Shultz v. Astrue, 479 F.3d 979,

_____

[8]Social Security Regulations 20 C.F.R. §§ 404.1529 and 416.929 require the analysis of two additional factors: (1) (continued...)

983 (8th Cir. 2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. See Polaski, 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. See id. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. See Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not

---

[8](...continued)
"treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under Polaski and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. See Shultz v. Astrue, 479 F.3d 979, 983 (2007). The ALJ, moreover, did not appear to base his findings on these factors. Thus, this Court will not scrutinize the ALJ's credibility determination on his application of these additional factors in this case.

entirely credible, the ALJ's credibility determination is entitled to deference. See id.; Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." Polaski, 739 F.2d at 1322.

Moreover, "'[a] treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" Hamilton v. Astrue, 518 F.3d. 607, 610 (8th Cir. 2008) (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted)).

In the present action, the ALJ began his evaluation of Biggs' subjective complaints and alleged mental impairments by listing the Polaski factors, then providing a truncated paraphrasing of Biggs' testimony at the hearing. Tr. 22-23. Then, the ALJ stated in conclusory fashion:

> After considering the evidence in the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

> produce the alleged symptoms, but that the
> claimant's statements concerning the
> intensity, persistence, and limiting
> effects of these symptoms are not entirely
> credible. Moreover, he failed to prove
> wholly work-preclusive limitations.

Tr. 23. The ALJ cited several portions of the record relating to Dr. Lee's treatment of Biggs. While conceding that the treatment records confirmed Biggs' troubling history of depression and anxiety, the ALJ suggested Biggs' psychiatric problems were exaggerated by alcohol abuse and contended Biggs' impairments were amenable to medication. Tr. 23. The ALJ pointed to several portions of the record purportedly supporting his claim. On closer inspection, however, these snapshots of Biggs' treatment history were either taken out of context, or flatly wrong.

For instance, the ALJ stated "[i]n July 2004, office notes showed that with regular treatment and absent the regular use of alcohol, [Biggs'] symptoms improved in that he slept better, did not feel violent, was not self-injurious, and felt 'a whole lot better.'" Tr. 23. However, in this entry Dr. Lee actually related that Biggs expressed frustration over the fact that, despite the treatment and ongoing use of prescriptions, he felt no improvement in his

conditions.  Tr. 285.  Dr. Lee notes he attempted to reassure Biggs that, given the nature of his problems, he was actually responding as well as could be expected to the treatment.  The entry never mentions improvements in sleep or that Biggs "did not feel violent."  Id.  Rather, it merely observes that Biggs "has not inflicted any wounds on himself."  Id.  As for the statement quoted by the ALJ stating that Biggs felt "a whole lot better," the complete sentence actually reads:  "He says he does not feel a whole lot better but does not feel any worse."  Id.

Next, the ALJ cites to Dr. Lee's entry of April 2005, as further support for his contention that Biggs need only abstain from alcohol and take his medications to be able to work.  Tr. 23.  At that appointment, Biggs did report he felt better and was able to smile and laugh, and he did report taking his medications as prescribed and avoiding heavy drinking.  What the ALJ failed to mention, however, is Dr. Lee's puzzlement over what he described as "quite a remarkable change for [Biggs]."  Tr. 272.  In fact, Dr. Lee's astonishment over what was truly a rare positive moment in Biggs' treatment is well placed — an entry made just one month

19

earlier described a much different patient: "He is about to climb up the wall. He is crying, he has violent feelings, angry, irritable ones, and [thinks] about cutting himself up." Tr. 273. And two months earlier, in February 2005, Biggs reported being "so scared and panicky that he has difficulty . . . calming himself down." Tr. 274.

The entries Dr. Lee made after the "positive" April 2005 entry provide an equally troubling picture of Biggs' mental health. Appointment entries never mentioned in the ALJ's decision indicate Biggs' anxiety disorder grew progressively worse from October 2005 on. On November 2, 2005, for example, Biggs reports his "anxiety is still bothering him and [he] does not know what to do." Tr. 312. On December 29, 2005, Biggs reports his anxiety makes him feel so nervous that he "is about to crawl out of his skin." Tr. 313. And on September 1, 2006, Biggs describes his anxiety as "unbearable." Tr. 317. The record is replete with such entries.

Consistent with these entries, Dr. Lee concluded in a January 13, 2005, psychiatric evaluation of his patient that Biggs "has not been able to be productively employed for quite

some time." Tr. 276. In a mental impairment questionnaire
dated January 30, 2007, Dr. Lee concludes "prognosis poor."
Tr. 324.

The ALJ, however, focused particularly on comments made
by Dr. Lee and other medical and psychiatric professionals
concerning Biggs' apparent abuse of alcohol. The ALJ believed
those comments undermined Biggs' credibility in general, and
Dr. Lee's conclusions in particular, and instead supported a
conclusion that Biggs was not disabled. The ALJ thus
concluded Dr. Lee's opinions would be afforded only partial
weight "because it is obvious from Dr. Lee's progress notes
that [Biggs'] symptoms were greatly improved when he followed
prescribed medication and abstained from alcohol." Tr. 24.
As explained above, however, this conclusion is seriously
undermined by the ALJ's selective use of portions of Dr. Lee's
treatment records.

Moreover, multiple non-examining medical consultants
confirmed that Biggs' subjective complaints of pain were
credible and that his use of alcohol was not a significant
factor in his overall psychiatric disposition. For example,
Dr. Christiansen's functional capacity assessment dated

February 1, 2005, provides "[t]he claimant's allegations are credible," and "[t]he use of alcohol contributes to these difficulties, but is not material at this time."  Tr. 271. Another medical consultant, Dr. Kazmierski, observed "[c]laimant reports that he is no longer drinking" and that Biggs' "allegations are credible."  Tr. 224.  No evidence in the record contradicts these findings.

The symptoms Biggs complained of during the hearing find ample support from evidence in the record, such as the numerous entries by Dr. Lee, Dr. Lee's opinions, as well as the years of prescriptions for medications reserved for serious mental impairments.  Moreover, the SSA's own non-examining medical advisors found Biggs' complaints of subjective pain to be credible.  Tr. 224, 271.  Quite simply, the ALJ's conclusion that Biggs' subjective complaints concerning the intensity, persistence and limiting effects of his conditions were "not entirely credible" is not supported by evidence in the record.  Rather, it is overwhelmingly contradicted by other evidence.  This evidence establishes that Biggs' mental impairments were significantly worse than merely periodic depression and anxiety, exacerbated by his

failure to comply with his medications and the consumption of
alcohol, as the ALJ found.[9]  Indeed, the records establish
that the use of alcohol was not a significant factor in Biggs'
impairment.  See Tr. 279-80 (in a psychiatric evaluation dated
January 13, 2005, Dr. Lee concluded that Biggs' alcohol
consumption is neither the source of his mental impairments,
nor the "predominate problem").

    As for the ALJ's faulting of Biggs for failing to keep up
with his medications as prescribed, the Court notes that the
record contains numerous references to Biggs' inability to
afford the extensive list of drugs prescribed by his
physician.  See, e.g., Tr. 280 ("He is struggling to get his
medications for logistics, financial reasons.").  Biggs'
inability to afford medication cannot be used as a basis for
a denial of benefits.  See Tang v. Apfel, 205 F.3d 1084, 1086
(8th Cir. 2000) (citing Ricketts v. Sec'y of Health & Hum.
Servs., 902 F.2d 661, 663-64 (8th Cir. 1990)).

    In short, none of the ALJ's stated reasons for
discrediting Biggs' subjective complaints or for granting Dr.
Lee's opinions only "partial weight" find support in the

_____

[9]See discussion supra pp.18-20.

record as a whole. As to the later determination, the ALJ's discrediting of Dr. Lee is particularly problematic given the fact that he was the only treating psychiatrist. <u>Hamilton</u>, 518 F.3d at 610. "The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician." <u>Id.</u> (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ's assertion that Biggs' subjective complaints were not credible is contradicted by Dr. Lee's opinions on the matter and the extensive treatment record compiled by Dr. Lee, as well as the assessments of the non-examining medical consultants. His reluctance to give Dr. Lee's opinion any weight must therefore be based upon "good reasons." <u>Id.</u> (citation omitted). The reasons given by the ALJ were not only unsupported, but were contradicted by the evidence in the record. The Court finds, therefore, that the ALJ's finding that Biggs' mental impairments would not preclude his performance of unskilled work, and that his abuse of alcohol and failure to adhere to prescribed treatment are factors contributing to the severity of his impairments, is not supported by substantial evidence in the record as a whole.

## B. *Hypotheticals*

Biggs' second claim is that the hypothetical questions the ALJ posed to the vocational expert (VE) were incomplete. The hypotheticals, Biggs contends, did not include several limitations caused by his impairments that were well documented by evidence in the record. The argument is thus intertwined with the overall credibility question, discussed above, as it is based on the proposition that, had the ALJ afforded Dr. Lee's assessments their proper weight, the ALJ's hypotheticals would have resembled the one Biggs' offered at the hearing. When that hypothetical, which included the additional restrictions found by Dr. Lee, was asked of the VE, the VE responded that the claimant would be unable to work. Tr. 462-63.

Testimony from a VE constitutes "substantial evidence" to support an ALJ's denial of social security disability benefits only when based on a properly phrased hypothetical question. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996)). When a hypothetical question does not encompass all relevant impairments — that is, those impairments that the ALJ finds

are substantially supported by record as whole — the VE's testimony does not constitute substantial evidence. <u>Pickney</u>, 96 F.3d at 296 (citing <u>Hinchey v. Shalala</u>, 29 F.3d 428, 432 (8th Cir. 1994); <u>Stout v. Shalala</u>, 988 F.2d 853, 855 (8th Cir. 1993)).

In this case, the ALJ acknowledged that Biggs suffers from depression and anxiety, and that finding is supported by ample evidence in the record. However, Dr. Lee diagnosed Biggs with several other disorders, including obsessive compulsive disorder (OCD), and he found that Biggs had poor impulse control. Tr. 280, 291. With these and other impairments in mind, Dr. Lee reported in Mental Impairment Questionnaire that Biggs lacked the ability to sustain an ordinary work routine without special supervision and that he could neither accept instructions nor respond appropriately to criticism from supervisors. Tr. 325-326. Given his severe anxiety, Dr. Lee further concluded that Biggs was unable to carry out detailed instructions. Tr. 326. He observed that Biggs had a history of severe mental breakdowns at work. Tr. 329. Finally, Dr. Lee noted that, in addition to these limitations, Biggs was prone to significant deficiencies of

concentration, persistence, and pace.  Id.

At the hearing, the ALJ posed hypothetical questions to the VE which set out the following limitations:  (1) the claimant can perform only simple, routine work; (2) the claimant can tolerate only occasional changes in the otherwise routine work setting; and (3) the claimant can tolerate only occasional interaction with the public, coworkers, and supervisors.  Tr. 460.  Based on these limitations, the VE testified the hypothetical individual could not perform any of Biggs' past relevant work.  Id.  The VE further testified, however, that such an individual would be capable of performing other work, identifying the positions of cleaner, poultry farm laborer, and laundry attendant.  Tr. 460-61.  When the ALJ added the additional limitation requiring two unscheduled breaks of one hour each per day," the VE responded that such an individual would not be able to perform any full time job in the national economy.  Tr. 461.

As Biggs points out, the hypothetical questions put to the VE did not accurately reflect *all* of his psychological disabilities shown in the record.  Specifically, the ALJ's hypotheticals failed to include Biggs':  (1) poor ability to

sustain an ordinary routine without special supervision; (2) poor ability to accept instructions or to respond appropriately to criticism; (3) deficiencies in concentration, persistence, and pace; (4) poor impulse control; (5) limited ability to maintain a usual work schedule without distraction from psychological causes; and (6) compulsive behaviors. <u>See</u> Docket No. 7 at 11. The ALJ's failure to incorporate Biggs' OCD in the hypotheticals is particularly troubling. This impairment — diagnosis of which was made by Dr. Lee (Tr. 291) and confirmed by every non-examining medical consultant (Tr. 224, 271, 297) — appeared not only to significantly inhibit his ability to engage in steady, productive work, but also to aggravate his other psychiatric conditions and precipitate his anxiety attacks. <u>See, e.g.</u>, Tr. 450-51. The evidence conclusively demonstrates this impairment negatively impacts Biggs' ability to work, and therefore should have been included in the questions posed to the VE.

Notwithstanding the ALJ's failure to include these limitations — which, as explained above, were established by overwhelming evidence in the record — his hypotheticals did not even accurately state the restrictions that the

28

impairments he *did* find would impose on Biggs' daily activities, or the effects his psychological meltdowns would have on his ability to engage in substantial gainful activity.[10]  See generally Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (a hypothetical question cannot constitute substantial evidence unless it incorporates reasonably all disabilities recognized by the ALJ and the claimant is afforded an opportunity to correct deficiencies in the ALJ's questions propounded to the VE).

Because the hypothetical questions posed to the VE failed to include all of Biggs' impairments that are supported by overwhelming evidence in the record, the Court concludes the

---

[10] For example, the ALJ found Biggs had two "severe impairments" — depression and anxiety.  Tr. 20.  A hallmark symptom of both disorders is the diminished ability to concentrate.  Stedman's at 114, 516.  Dr. Lee confirmed this symptom when he described Biggs' ability to carry out "very short and simple instructions" as "fair" (a rating indicating that, in Dr. Lee's opinion, Biggs' "[a]bility to function in this area is seriously limited, but not precluded"), and his further description of Biggs' ability to carry out "detailed instructions" as "poor or none" (indicating his opinion that Biggs possessed "[n]o useful ability to function in this area").  Tr. 325-26.  Yet, when specifically questioned about these limitations by Biggs' attorney, the VE stated that a hypothetical individual with such a limited ability to concentrate would not be able to engage in substantial gainful activity.  Tr. 463.

ALJ's ultimate finding that Biggs was not disabled through the date of the decision was not supported by substantial evidence. Even if the Court were to accept the ALJ's determination that these deficiencies were unsupported by the record, the ALJ's hypotheticals would still be irredeemably faulted by their failure to capture the concrete consequences of the impairments actually conceded by the ALJ.

## C. *Onset Date*

As far as social security cases go, Mr. Biggs' case is different. Biggs has suffered from psychological impairments for nearly his entire life, with troubling manifestations of his impairments appearing as early as high school. By that time, Biggs had been convicted three or four times for drunken driving, and was in such a grim condition that he was sent to prison. In the experience of this Court, an offender is not sent to prison for operating while intoxicated until the courts are truly at wit's end. Biggs has been so troubled that he has resorted to cutting himself to relieve his anxiety. Although the average 29-year-old is, generally speaking, far too young to properly receive entitlements, a 29-year-old who never really has lived "normally" may properly

be categorized as disabled.

This Court is persuaded that Biggs has been disabled in this manner for the majority of his lifetime. As Dr. Lee sets out in his psychiatric evaluation dated January 13, 2005 – and as confirmed by the details provided in this Order[11] – as of this date it is clear that Biggs' struggle to cope with his impairments has rendered him disabled. The onset date for benefits shall thus be January 13, 2005.

## V.  CONCLUSION

**IT IS THEREFORE HEREBY ORDERED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the ALJ is REVERSED, and the Commissioner is directed to compute and award disability benefits to Biggs with an onset date of January 13, 2005. The Court is persuaded that the record reflects that as of this date, Biggs had several serious impairments as set out in this Order. See supra Part B. The Court finds, therefore, that as of this date, Biggs was disabled.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), must be

---

[11]See supra pp. 18-20.

filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Biggs' attorney wishes to apply for EAJA fees, then he must do so within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 24th day of November, 2008.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa